**Theodore Andrew JASTREMSKI and Chester Jastremski, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 83–1277.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1984.

Decided June 19, 1984.

Perry M. Rosen, Torts Branch, Civil Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

C. Warren Holland, Holland & Tabor, Indianapolis, Ind., for plaintiffs-appellees.

Before CUMMINGS, Chief Judge, BAUER, Circuit Judge, and REYNOLDS, Chief District Judge.*

* The Honorable John W. Reynolds, Chief District Judge for the Eastern District of Wisconsin, sitting by designation.

REYNOLDS, Chief Judge.

Chester Jastremski and his son, Theodore Andrew Jastremski, brought a medical malpractice action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680 (1982). The action arises out of obstetrical and pediatric care provided by United States Army medical personnel during Theodore Jastremski's birth in July of 1971. After a three-day trial, the district court entered findings of fact, conclusions of law, and judgment, awarding $400,000 to the injured child and $1.00 to his father. On appeal, the government presents three challenges to the judgment. First, it asserts that the district court erred in concluding that the plaintiffs brought their action in a timely fashion, within the two-year statute of limitations period. Second, it contends that it was clearly erroneous for the district court to find that the child's injury was proximately caused by the negligence of the government. Third, the government argues that the award of damages in the amount of $400,000 was clearly erroneous.

For the reasons expressed below, we affirm the judgment of the district court.

## I.

Theodore Jastremski was born on July 22, 1971, in the United States Army Hospital at the United States Military Academy at West Point, New York. The child's father, Dr. Chester Jastremski, was a licensed physician practicing at the Army Hospital as a clinical pediatrician at the time of his son's birth. Theodore was delivered vaginally in the breech position. To induce labor, the drug Pitocin was administered; the drug was administered in the labor room without its rate of flow being monitored. In the delivery room, with the child ready for delivery, a spinal anesthetic was administered against both parents' wishes and in a dosage too large for a vaginal delivery. Soon after the anesthetic was administered, the mother's contractions all but disappeared. The attending physician, Dr. Kearing, directed Dr. Jastremski and a nurse to push on the mother's abdomen against the child's head as hard as they could. Dr. Kearing at the same time succeeded in pulling the baby from its mother.

Fifty-one hours after his birth, Theodore Jastremski suffered a series of grand mal seizures. Several tests were performed on the child at the hospital to discover the cause of the seizures, but all were negative. Upon discharge from the hospital, Theodore was seen by a pediatric neurologist at the suggestion of hospital personnel. Again, no neurological cause for the seizures was found. Theodore did not experience another seizure after those in the hospital shortly after birth.

Theodore thereafter developed normally except for an abnormal gait which appeared at age two. The problem was diagnosed as orthopedic by two orthopedic specialists whom the Jastremskis consulted. Neither orthopedic surgeon diagnosed any neurological injury.

In July of 1975, during a social visit to the Jastremski home, Dr. Alan Somers, a neurologist, mentioned after observing four-year old Theodore that the child might have cerebral palsy. Following a neurological examination of Theodore in August of 1975, Dr. Somers made a diagnosis of cerebral palsy. Dr. Jastremski had never diagnosed or treated a case of cerebral palsy in the course of his medical practice. The Jastremski parents state that a possible causal connection between Theodore's physical condition and the events surrounding his birth did not occur to them until after Dr. Somers' diagnosis. In October of 1975, the Jastremski parents filed administrative claims on behalf of Theodore.

This action was commenced on February 9, 1979, Theodore seeking damages for his injuries, his father asking for compensation for the loss of his son's services. The case was tried on October 10–12, 1982, in the United States District Court for the Southern District of Indiana, the Honorable S. Hugh Dillin presiding. The district court found that Theodore's seizures were symptomatic of a brain injury suffered immediately before his birth and resulting in a

condition of cerebral palsy. The court determined that the government was negligent, and that such negligence was the proximate cause of the child's injury. Judge Dillin then described the nature of Theodore's damages and found that the child's "future development is handicapped and he will be unable to engage in activities or occupations requiring good motor functions, especially dexterity and fine coordination."

The lower court concluded as a matter of law that the plaintiffs filed their administrative claim within two years of the time they knew of the existence and cause of the child's injury. Theodore was awarded $400,000 damages. His father offered no proof of damages, and was awarded $1.00 for the loss of his son's services.

## II.

### A. *Statute of Limitations*

The lower court concluded that the plaintiffs filed their administrative claim within two years of the time they knew of the existence and cause of Theodore's injury. This conclusion of law was based on the factual finding that the Jastremskis did not discover Theodore's injury and its cause until Dr. Somers' social visit in July 1975. Initially, the government contends that this finding of fact is clearly erroneous.

■■■ Tort claims against the United States must be brought within two years after such claims accrue. 28 U.S.C. § 2401(b) (1982).[1] The parents or guardian of a minor must bring the minor's claim in a timely fashion because the child's minority does not toll the running of the federal tort claims statute of limitations. *Leonhard v. United States*, 633 F.2d 599, 624 (2d Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981).

■■■ When a claim accrues under section 2401(b) of the Federal Tort Claims Act

it is governed by federal law. *Fisk v. United States*, 657 F.2d 167, 170 (7th Cir. 1981). A medical malpractice claim under the Federal Tort Claims Act accrues when the claimant discovers or, in the exercise of reasonable diligence, should discover his injury and its cause. *United States v. Kubrick*, 444 U.S. 111, 120 n. 7, 100 S.Ct. 352, 358 n. 7, 62 L.Ed.2d 259 (1979); *Stoleson v. United States*, 629 F.2d 1265, 1268 (7th Cir.1980).

■■■ The government argues, first, that the Jastremskis either knew of or should have been aware of Theodore's injury and its cause in July of 1971. This finding, according to the government, is supported by the following subsidiary facts. Dr. Jastremski is a physician; he and his wife had firsthand knowledge of the negligent acts performed during Theodore's delivery; the Jastremskis knew that Theodore suffered seizures fifty-one hours after birth; hospital personnel told Dr. Jastremski to take his son to a private neurologist; and Dr. Jastremski knew, as a physician, that seizures quite possibly signify neurological or brain-related injury. The government contends that from these facts it follows that as early as July of 1971, the Jastremskis should have known that Theodore had suffered brain damage. Further, they should have been aware of the causal link between that neurological injury and the conduct of the Army medical personnel.

The government argues, second, that even if the Jastremskis did not become aware of Theodore's brain injury soon after birth, they surely should have discovered it at least by July of 1973. Theodore's injury presently manifests itself in difficulty walking, which became apparent when Theodore was about one year old. The problem was recognized and treated by two orthopedists in 1973. This action would be barred if the plaintiffs' claim accrued as late as July 1973.

---

**1.** Section 2401 provides in pertinent part:

    (b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or

unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.
28 U.S.C. § 2401(b) (1982).

The government's arguments are not persuasive. Our review of the lower court's findings of fact is guided by the Federal Rules of Civil Procedure, which provide: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). A trial court's findings of fact are entitled to a strong presumption of correctness, particularly when those findings are based primarily upon the credibility of witnesses. *Lee v. National Can Corp.*, 699 F.2d 932, 936 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983).

Dr. Jastremski testified without contradiction that neither he nor his wife suspected that their son had brain damage until Dr. Somers diagnosed cerebral palsy in July 1975. The direct testimony further revealed that until July of 1975, the Jastremskis did not suspect that Theodore's walking problems had a neurological origin; moreover, the parents did not link Theodore's problems with the circumstances of his birth. The trial judge credited this testimony notwithstanding the facts asserted by the government. On review of the record as a whole, we are not convinced that the lower court has committed a mistake.

Certainly Chester Jastremski is a physician. He was present in the delivery room to observe his son's traumatic birth. He also knew that Theodore had seizures soon after birth and later developed walking problems. A doctor might possibly regard these difficulties as manifestations of an underlying injury. The same physician also could surmise, at least in theory, that such an injury was neurological in nature. Assuming these propositions to be true, we refuse to impute to Dr. Jastremski, contrary to his testimony, knowledge he did not have in 1973 or before; namely, that his son suffered from a brain injury and that such injury probably was caused by acts of the defendant when Theodore was born.

Theodore did not suffer another seizure after his initial spell. The Jastremskis consulted a private neurologist immediately after the child was discharged from the hospital, but the tests proved negative. The parents then investigated orthopedic avenues of treatment before cerebral palsy was mentioned. The Jastremskis did not discover Theodore's injury or its causal link to the child's birth before July 1975. It is evident from the record that the Jastremskis exercised reasonable diligence to become aware of those facts. The district court's finding that their knowledge of Theodore's injury and its cause was not acquired until July 1975 is not clearly erroneous. We affirm the conclusion that this action is not barred by the statute of limitations for federal tort claims.

### B. *Proximate Cause*

◼ The district court found to a reasonable degree of medical certainty that Theodore suffered an injury to his brain, a sub arachnoid hemorrhage, immediately before he was born, resulting in a mild form of cerebral palsy. The court also found that Theodore's injury was the proximate result of the government's negligence. The government contends that this finding of proximate cause is clearly erroneous because there is no credible evidence in the record to support it.

Eight physicians testified at trial as expert witnesses regarding the causal connection between Theodore's injury and the defendant's acts. The government called Drs. James Lemons and Neils Low, neurologists, and Dr. Robert Rogers, an obstetrical expert. Defense experts Lemons and Low could not state with any degree of medical certainty that the brain injury was caused by any acts of the defendant rather than by the increased risks of a natural birth in the breech position.

Dr. Rogers opined that the natural birth process alone was the cause of Theodore's injury.

For the plaintiffs, testifying as medical experts on the issue of cause, were Drs. John Mealey and Alan Somers, neurologists; Dr. Thomas Ferrara, the obstetrical expert; Dr. Richard Baum, an expert in neonatology; and Dr. Chester Jastremski, plaintiff. Neither Dr. Mealey nor Dr. Somers could determine within a reasonable degree of medical certainty whether any act of the defendant caused Theodore's injury. Dr. Ferrara's opinion as to cause was disregarded by the lower court because the court and Dr. Ferrara disagreed on the nature of the injury. It was expert testimony of Dr. Baum and the plaintiff, Dr. Jastremski, however, that the lower court ultimately credited on the question of proximate cause.

Dr. Baum testified with regard to the particularly forceful breech extraction that marked Theodore's birth, and when asked to identify the probable cause of the child's injury, he listed several "highly probable" causes, adding that "the possibility of just sheer mechanical damage from pushing and bleeding would probably be at the top of my hierarchy." When pressed by the court to distinguish between probabilities and mere possibilities, Dr. Baum identified the most probable cause of Theodore's injury as "birth trauma, mechanical damage to the brain itself during delivery or interference with blood flow because of hemorrhage or because of inordinate pressure at the time of delivery."

Dr. Jastremski went beyond the documentary evidence and testified in regard to the specific acts of the defendant's medical personnel. His opinion, to a reasonable degree of medical certainty, was that Theodore's injury resulted from an extended stage of labor due to the anesthesia and from undue pressure on the infant's head incident to the child's extraction.

Without second-guessing the trial court's determinations respecting the credibility of the expert witnesses and the weight of their testimony, we believe there is ample evidence in the record to support the district court's finding of proximate cause. A finding of proximate cause may not be based on speculation or conjecture. When that finding is based on expert evidence, the expert must "signify a probability supported by some rational basis"; mere possibilities will not suffice. *Matott v. Ward,* 48 N.Y.2d 455, 399 N.E.2d 532, 535, 423 N.Y.S.2d 645, 648 (1979) (quoting *Matter of Miller v. National Cabinet Co.,* 8 N.Y.2d 277, 282, 168 N.E.2d 811, 813, 204 N.Y.S.2d 129, 133 (1960)).[2] The plaintiffs, however, need not prove that the defendant's conduct was the only cause of the injury. *See Monahan,* 442 N.Y.S.2d at 299.

Dr. Baum's testimony as a whole provides an adequate basis for a finding which links Theodore's brain injury to the negligent acts of the defendant's medical personnel. Furthermore, it was not error for the trial judge to rely additionally on Dr. Jastremski's expert medical opinion as to cause while crediting his testimony that he did not know the cause of his son's injury before 1975. It is not inconsistent for Dr. Jastremski to testify as a medical expert on the basis of what he knew in 1982. Giving due regard to the district court's opportunity to judge the credibility of Dr. Baum and Dr. Jastremski and to make reasonable inferences from their testimony, we are persuaded that the finding of probable cause was not clearly erroneous.

## C. *Damages*

The government's third ground for appeal is that the district court's finding of

---

**2.** In an action for negligence under the Federal Tort Claims Act, the substative law to be applied is that of the state where the wrongful act or omission occurred. 28 U.S.C. § 1346(b) (1982); *Fisk v. United States,* 657 F.2d 167, 170 (7th Cir.1981). New York law applies in this action and requires a plaintiff suing for medical malpractice to prove that the injuries he alleges were proximately caused by the actions of the defendant. *Monohan v. Weichert,* 82 A.D.2d 102, 442 N.Y.S.2d 295, 298 (1981).

damages in the amount of $400,000 for Theodore was based on speculation and conjecture, was excessive, and therefore was clearly erroneous. We disagree.

The government's attack on the damage award is two-pronged. First, the trial court's only statement regarding the amount of damages allocated to Theodore was conclusion of law number 6:

> The total damage which the plaintiff Theodore Andrew Jastremski has suffered and proved, and for which he should have judgment against the defendant United States of America is the sum of Four Hundred Thousand Dollars ($400,000.00). A guardian should be appointed for said minor to receive such sum.

The government insists that the district court's failure to make findings delineating damages with any particularity constitutes reversible error. Second, the government argues that the award is speculative and excessive because the plaintiffs failed to present direct evidence proving the amount of damages to any degree of reasonable certainty.

■ Damages under the Federal Tort Claims Act are assessed according to state law. *Smith v. Pena*, 621 F.2d 873, 881 (7th Cir.1980). In this case we must look to the law of New York to determine what elements of damages may be assessed and when an award is excessive. Federal law, however, determines how specific a trial court's findings must be on the question of damages. *See* Fed.R.Civ.P. 52(a).

New York allows recovery of three elements of damages in personal injury actions: medical expenses, loss of past and future earnings, and pain and suffering. *Kozlowski v. Briggs Leasing Corp.*, 96 Misc.2d 337, 408 N.Y.S.2d 1001, 1003 (1978). Rule 52(a) of the Federal Rules of Civil Procedure, however, does not uniformly require the district court sitting as a trier of fact to itemize each of these elements in its award of damages. *George v. United States*, 295 F.2d 310 (7th Cir. 1961).

■ The lower court's award of a lump sum in damages to Theodore is not reversible error. In his findings of fact, the trial judge explained in great detail the injuries and damages suffered by the Jastremski child. The court further found that Theodore's injuries have handicapped his future development; the child will be unable to engage in activities or employment which require dexterity, fine coordination, and good motor function. The court then noted that Theodore was twelve years of age at the time of trial and has an average life expectancy of 57.73 years. These findings supply an adequate indication of the elements that comprised the award of damages. The failure to divide the lump sum award into discrete elements of recovery does not warrant reversal.

■ Similarly, we find upon review of the record that the award in this case is amply supported by the evidence. A plaintiff must prove his damages to a reasonable degree of certainty and not with scientific rigor. *See Veeco Instruments, Inc. v. Candido*, 70 Misc.2d 333, 334 N.Y.S.2d 321, 324 (1972). In New York, an award of damages is not excessive unless the amount so deviates from what is considered fair compensation as to shock the conscience of the Court. *See Beardsley v. Wyoming County Community Hospital*, 79 A.D.2d 1110, 435 N.Y.S.2d 862, 863–64 (1981). The government emphasizes that the plaintiffs did not offer evidence of specific occupations now foreclosed to Theodore, did not offer medical bills in evidence, and did not call an economist to testify regarding loss of future earning capacity. We do not regard these factors as dispositive of this case. The findings of the trial court set forth at length the nature of Theodore's injuries, the permanence of those injuries, and the psychological and emotional disabilities which result from such injuries. Expert testimony in regard to damages is unnecessary when the trial court can ascertain to a reasonable certainty, from other evidence in the case and from reasonable inferences based thereon, an amount which will fairly compensate the

plaintiff. *See, e.g., Alexandervich v. Gallagher Brothers Sand & Gravel Corp.,* 298 F.2d 918, 921 (2d Cir.1961); *Hegarty v. Railway Express Agency,* 126 N.Y.S.2d 107, 114, *aff'd,* 282 A.D. 871, 124 N.Y.S.2d 924 (1953). The district court's award of $400,000 to Theodore finds support in the record and is not so high as to shock the judicial conscience. Nor is it a denial of justice to permit the award to stand.

### III.

For the reasons expressed above, the judgment of the district court is affirmed.