**Earl GREEN, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 84–2384.

United States Court of Appeals,
Seventh Circuit.

Argued March 5, 1985.
Decided June 21, 1985.

Lawrence W. Leck, Chicago, Ill., for plaintiff-appellant.

William T. Clabault, Asst. U.S. Atty. (Dan K. Webb-U.S. Atty.), Chicago, Ill., for defendant-appellee.

Before WOOD, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiff-appellant Earl Green brought this action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. (1983), alleging negligent medical care by Veterans Administration physicians and personnel. The district court granted the government's motion for summary judgment, finding that Green's action was barred by the two-year statute of limitations of 28 U.S.C. § 2401(b). As explained below, we affirm.

## I.

Earl Green, a World War II veteran, was treated at West Side and Hines Veterans Administration hospitals for two different oral cancers. From May 15, 1978 until August 2, 1978, Green was treated with radiation for carcinoma of the right soft palate and anterior tonsiller pillor area. From October 23, 1979 until November 20, 1979, Green was hospitalized and received radiation therapy at Hines for cancer of the tongue. Green was discharged from Hines on November 20, 1979 but continued to receive follow-up treatment until April of 1980. In toto, Green received radiation dosages of 14,090 rads [1] while in VA care.

Green was admitted to Cook County Hospital on May 12, 1980 hemorrhaging from the mouth and remained there until July 23, 1980. During this hospitalization at Cook County, Green underwent several operations including a tracheotomy, debride-ment and biopsies of necrotic tissue from his mouth and tongue and the insertion of a jejunostomy tube for feeding. Dr. Tangalos, Green's treating physician, testified in his deposition that he explained to Green that the dead tissue in his mouth was caused by the radiation therapy which he had received for cancer.

Green was readmitted to Cook County on August 12, 1980 when a fistula developed in his right cheek. During this second period of hospitalization, Green underwent five major surgical procedures, four of which directly related to osteoradionecrosis [2] of the jaw and the fistula in his cheek. The Cook County hospital records reflect that Green's condition was diagnosed on August 14, 1980 as osteonecroses of the jaw and development of an orocutaneous fistula after radiation therapy. Dr. Tangalos testified that, prior to this second set of operations to repair the fistula, he explained to Green the nature of his injuries and that they were caused by the radiation therapy. Dr. Tangalos stated that Green indicated that he understood the explanations and consented to the surgery. An operative note of August 18, 1980 by Dr. Tangalos specifically diagnoses Green as suffering from osteoradionecrosis. Green underwent further surgical procedures after October 10, 1980, including the removal of a portion of his jaw, and was discharged from Cook County Hospital in February of 1981.

On October 13, 1982, Green filed a claim with the Veterans Administration, alleging that he had suffered substantial injuries due to excessive radiation administered by Veterans Administration personnel. Following denial of his claim by the Veterans Administration, Green filed suit in district court. The government moved for summary judgment, contending that Green's action was barred by the two-year statute of limitation of 28 U.S.C. § 2401(b).[3] Green

---

**1.** A rad is a unit of measurement of absorbed radiation. 3 Schmidt, *Attorney's Dictionary of Medicine,* p. R-04 (1985).

**2.** Osteoradionecrosis is the death of bone tissue resulting from excessive exposure to x-rays or radium. Schmidt at 0-72.

**3.** 28 U.S.C. § 2401(b) provides:

then amended his complaint to include claims of failure to diagnose and treat as well as the deliberate failure to treat. On June 12, 1984, the district court granted the government's motion for summary judgment finding that under the standards enunciated in *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), Green's claims were time-barred.

## II.

■ The Federal Tort Claims Act (FTCA) bars claims against the United States unless they are presented in writing to the appropriate agency within two years after the claim accrues. 28 U.S.C. § 2401(b); *Burgess v. United States*, 744 F.2d 771, 773 (11th Cir.1984); *Jastremski v. United States*, 737 F.2d 666, 669 (7th Cir.1984). When a claim accrues under § 2401(b) of the FTCA is governed by federal law. *Id.; Snyder v. United States*, 717 F.2d 1193, 1195 (8th Cir.1983). Medical malpractice claims under the FTCA accrue when a plaintiff has discovered his injury and its probable cause even though he may be ignorant of his legal rights. *United States v. Kubrick*, 444 U.S. 111, 122–24, 100 S.Ct. 352, 359–60, 62 L.Ed.2d 259 (1979); *Drazan v. United States*, 762 F.2d 56, 58 (7th Cir.1985); *Jastremski*, 737 F.2d at 669; *Stoleson v. United States*, 629 F.2d 1265, 1268 (7th Cir.1980). The statute of limitations does not await the plaintiff's knowledge that his injury was caused by negligence or reckless conduct. *Kubrick*, 444 U.S. at 122–24, 100 S.Ct. at 359–60.

The district court employed the *Kubrick* standard and concluded that Green's action was barred by the statute of limitations because Green " 'discovered' both his injury and its probable cause at least, as early as August 1980 when Dr. Tangalos diagnosed his condition as osteoradionecrosis ..." (R. at 40, p. 6). Summary judgment may properly be entered on the basis of a statute of limitations defense if "(1) the statute of limitations has run, thereby bar-

ring the plaintiff's claim as a matter of law, and (2) there exist no genuine issues of material fact regarding the time at which plaintiff's claim has accrued and the application of the statute to plaintiff's claim which may be resolved in plaintiff's favor." *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1219 (7th Cir.1984). *See also Snyder*, 717 F.2d at 1195; *Hanna v. United States Veterans' Administration Hospital*, 514 F.2d 1092 (3d Cir.1975).

## III.

Green argues initially that the district court misconstrued *Kubrick* in concluding that his action was time-barred. Green alleges that osteoradionecrosis is an expected side effect of radiation therapy of which Veterans Administration physicians had warned him prior to radiation therapy. Therefore, Green continues, he was unaware that he had sustained an "injury" within the meaning of *Kubrick* when he experienced osteoradionecrosis and its concomitant side effects because he was merely experiencing expected "side effects." Green argues that the two-year statute of limitations set forth in section 2401(b) did not commence to run until he sustained injuries which exceeded the expected side effects of radiation therapy. Green concludes that he first realized that his injuries exceeded the expected side effects of radiation therapy when he underwent the removal of a portion of his jaw in November of 1980. Conveniently, this brings Green's cause of action within the statute of limitations.

While this argument is creative, we must reject it as it places a gloss upon the word "injury" which is neither supported by the legislative history of section 2401(b) nor the holding of *Kubrick*. In *Kubrick*, the plaintiff, a veteran, was treated at a VA hospital with neomycin for a leg infection. Six weeks following his discharge, Kubrick experienced hearing loss and a ringing in his ears. In January of 1969, Kubrick learned

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim, by the agency to which it was presented.

from a physician that it was highly possible that his hearing loss was caused by the neomycin treatment. Kubrick did not file a claim with the VA until June 1971, after learning from another physician that the neomycin should not have been administered. In holding that Kubrick's claim was time-barred, the Supreme Court noted that the "obvious purpose" of the two-year limitations period was "to encourage the prompt presentation of claims." 444 U.S. at 117, 100 S.Ct. at 356, and that as a waiver of sovereign immunity, the limitations period must not be unnecessarily expanded. 444 U.S. at 117–18, 100 S.Ct. at 356–57. The Supreme Court explicitly rejected the proposition that the cause of action does not accrue until the plaintiff learns that his injury was negligently inflicted. 444 U.S. at 122, 100 S.Ct. at 359. Rather, a cause of action accrues within the meaning of § 2401(b) when the plaintiff discovers, or in the exercise of reasonable diligence, should discover his injury and its cause. 444 U.S. at 120 n. 7, 122–23, 100 S.Ct. at 358 n. 7, 359–60; *Drazan,* at 59 ("It [the statute of limitations] begins to run either when the government cause is known or when a reasonably diligent person (in the tort claimant's position) reacting to any suspicious circumstances of which he might have been aware would have discovered the government cause—whichever comes first."); *Burgess,* 744 F.2d at 773; *Jastremski,* 737 F.2d at 669; *Stoleson v. United States,* 629 F.2d at 1268. The rationale underlying this proposition is simply that once "[a] plaintiff [is] ... armed with the facts about the harm done to him, [he] can protect himself by seeking advice in the medical and legal community." *Kubrick,* 444 U.S. at 123, 100 S.Ct. at 360.

With these considerations in mind, we agree with the district court's conclusion that Green's action was time-barred. It is clear that Green knew, or in the exercise of reasonable diligence must have known of the nature and cause of his injury well in advance of October 1980, and this is all that *Kubrick* requires. The record clearly reflects that Green underwent eight major surgical procedures prior to October 13, 1980 and was informed at least twice that his injuries were caused by the radiation therapy. Further, the severity of Green's injuries—the oral hemorrhaging, the development of an oral fistula, the numerous surgical procedures and the length of his hospitalization—would have caused a reasonably diligent claimant to seek advice in the medical and legal community. By contrast, adoption of Green's argument would effectively undermine the prompt presentation of tort claims against the government and even though the claimant is armed with "the facts about the harm done to him," he would be excused from seeking advice in the medical and legal communities. This is contrary to *Kubrick* and we conclude that the district court properly found Green's claims time-barred under *Kubrick.*

After the government moved for summary judgment, Green amended his complaint to include allegations of failure to diagnose (Count III), failure to treat (Count IV) and failure to provide post-radiation treatment (Count VI). Green contends "that the failure of the Veterans Administration physicians to diagnose and treat his condition ... caused his condition to worsen to a point where a series of surgeries including a partial mandiblectomy in November of 1980 were ultimately required." (Br. at 14). Citing *Page v. United States,* 729 F.2d 818 (D.C.Cir.1984) and *Augustine v. United States,* 704 F.2d 1074 (9th Cir.1983), Green contends that the *Kubrick* test may not be applied mechanically to cases involving failure to diagnose, treat or warn. *See also Raddatz v. United States,* 750 F.2d 791, 796–98 (9th Cir.1984).

In *Augustine,* plaintiff brought suit under the FTCA for the medical malpractice of Air Force Dental Surgeons. Augustine filed an administrative claim more than two years after Air Force dentists discovered a lump in his mouth but negligently failed to diagnose it. The district court dismissed the case as not timely filed. The Ninth Circuit reversed, holding that where a claim of medical malpractice arises from the failure to diagnose or treat a patient, the injury is not the mere undetected existence of the medical problem, but rather, is "the *development* of the problem into a

more serious condition which poses greater danger to the patient or which requires more extensive treatment." 704 F.2d at 1078 (emphasis in original). In such cases, "it is only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition that his cause of action can be said to have accrued for purposes of section 2401(b)." *Id.*

Applying this standard to Green's allegations of failure to treat, diagnose, and warn, we find that Green's cause of action accrued for purposes of section 2401(b) at least as early as August 1980 and probably earlier. Green knew that the VA had (allegedly) denied him medical care in May 1980 when he entered the hospital hemorrhaging from the mouth and was immediately hospitalized at Cook County Hospital. It is undisputed that Green's condition was diagnosed as osteoradionecrosis, that he signed consent forms for surgery to repair this condition and underwent numerous major surgical procedures prior to October 13, 1980. A plaintiff, in the exercise of reasonable diligence, should have become aware of his injury at this time. We conclude that the district court properly found Green's claims time-barred.

AFFIRMED.