# In the
# United States Court of Appeals
## For the Seventh Circuit

───────────

No. 02-1100

MICHAEL MASSEY,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

───────────

Appeal from the United States District Court
for the Central District of Illinois.
No. 99 C 3309—**Richard Mills**, *Judge.*

───────────

ARGUED SEPTEMBER 17, 2002—DECIDED NOVEMBER 27, 2002

───────────

Before FLAUM, *Chief Judge*, and EASTERBROOK and RIPPLE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Michael Massey, an inmate at the Federal Correctional Institution in Pekin, Illinois ("FCI-Pekin"), filed a medical malpractice suit against the United States under the Federal Tort Claims Act ("FTCA"). The district court granted the United States' motion for summary judgment, and Mr. Massey now appeals from that ruling. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

**I**

**BACKGROUND**

**A. Facts**

Mr. Massey was incarcerated at FCI-Pekin from March 26, 1996, to June 29, 2000. During the summer of 1995, while incarcerated at the Marion County Jail, Mr. Massey had begun experiencing pain in his abdominal region and had noticed a lump protruding from his naval. Once Mr. Massey arrived at FCI-Pekin, he began to complain about abdominal pain. On July 19, 1996, his attorney wrote David Helman, FCI-Pekin's warden, a letter stating that Mr. Massey had a hernia "for which he may need surgery" and that the prison's response to Mr. Massey's condition had been unsatisfactory. R.43, Ex.2. The letter complained that, although the prison medical staff instructed Mr. Massey to avoid heavy lifting, such a warning was "hardly an adequate response to a hernia." *Id.* According to his attorney, Mr. Massey was "really in pain and in need of medical attention." *Id.* at 2. Mr. Massey testified that he received a copy of this letter.

On July 31, 1996, Dr. John Otten, an FCI-Pekin staff physician, examined Mr. Massey with respect to his abdominal pain. Dr. Otten told Mr. Massey that he suffered from an umbilical hernia and that the hernia required surgery soon. Dr. Otten also informed Mr. Massey that "he would put the paperwork in to get the surgery scheduled." R.43, Ex.1 at 35. According to Mr. Massey, he believed, on the basis of his conversation with Dr. Otten, that the hernia required immediate treatment. On August 5, 1996, Dr. Otten placed Mr. Massey's name on a wait list for inmates in need of surgery; however, on August 27, 1996, Ferdinand Samalio, a health services administrator at FCI-Pekin, removed Mr. Massey's name from the list.

Over the next four months, Mr. Massey's hernia grew and his pain increased greatly. By October or November of 1996, Mr. Massey was becoming very uncomfortable; he testified that he could no longer sleep on his stomach and that he had trouble with bowel movements. Because of the increased pain and Mr. Massey's belief that he needed to "stay on top" of the prison's treatment of his condition, Mr. Massey spoke to Dr. Otten, health services administrator Samalio, FCI-Pekin nurses and his attorney about obtaining the surgery promptly. *Id.* at 36. Mr. Massey believed that the prison was delaying his surgery; indeed, he registered numerous complaints with a prison review committee, but nothing came of his efforts.

When 1997 began, the surgery still had not taken place. Mr. Massey testified that, by this point, the hernia caused him pain on a daily basis, and he believed that his requests for an operation were being completely ignored. On January 29 of that year, Mr. Massey's attorney wrote a second letter to FCI-Pekin's warden. He stated that Mr. Massey's "hernia keeps growing, with no surgery scheduled" and that Mr. Massey's "repeated phone calls" to him caused "serious concern on [his] part as to whether [FCI-Pekin] is violating [Mr. Massey's] constitutional rights, in addition to placing his life in serious jeopardy because of inattention to his medical needs." R.43, Ex.3. In the same letter, Mr. Massey's attorney also threatened to sue FCI-Pekin in order to remedy the situation. Mr. Massey testified that he received a copy of this letter and agreed with its accusations. On December 18, 1997, Dr. John Stephen Marshall, a surgeon with the Peoria Surgical Group, examined Mr. Massey pursuant to a consultation contract with FCI-Pekin. Dr. Marshall diagnosed Mr. Massey as suffering from a freely reducible hernia, which did not require immediate

surgery.[1] Mr. Massey complained that his pain was increasing, and, consequently, Dr. Marshall recommended and performed Mr. Massey's hernia operation on January 28, 1998. Dr. Marshall testified that Mr. Massey's recovery was unremarkable, with no complications. After surgery, Dr. Marshall ordered Mr. Massey to refrain from heavy lifting. He also recommended that the prison administer Vicodin to Mr. Massey for pain relief as needed.

When Mr. Massey returned to FCI-Pekin, prison officials placed him in his cell and administered Tylenol with codeine (also known as "Tylenol 3") instead of Vicodin. Rather than bring Mr. Massey his Tylenol 3, prison officials required him to walk from his cell to the infirmary to get his prescription. They also required Mr. Massey to walk from his cell to the dining hall for meals.

Following this allegedly improper treatment, Mr. Massey filed an administrative tort claim, which the Bureau of Prisons ("BOP") received on February 23, 1999. On November 10, 1999, Mr. Massey filed a medical malpractice suit against the United States pursuant to the FTCA.

## B. District Court Proceedings

Mr. Massey raised two claims before the district court. First, Mr. Massey claimed that the prison was negligent in its delay in providing him with the surgical repair of his

---

[1] According to Dr. Marshall, "[h]ernias can be classified into two groups; those that are reducible, meaning that the contents protrude but can be pushed back in without any difficulty; and those that are incarcerated, meaning that the contents are stuck in the hernia and cannot be pushed back into its normal domain." R.43, Ex.4 at 9. The fact that Mr. Massey's hernia was not incarcerated made it "less urgent to repair." *Id.*

hernia. Second, Mr. Massey claimed that the prison was negligent in failing to follow post-surgical orders directing that he receive Vicodin and be placed in the prison observation unit for two days. The district court granted summary judgment in favor of the United States on both claims.

The district court held that Mr. Massey's claim of negligent delay of surgery was time-barred because he failed to present the claim to the BOP within two years after the claim accrued. The district court determined that "there is no doubt that Mr. Massey believed the hernia to be serious by January 29, 1997" and that, "since he discovered his injury (the increased pain) and its probable cause (the prison's delay) no later than January 29, 1997, the statute of limitations for his FTCA suit began to accrue on that date—if not before." R.57 at 9. The district court further held that Mr. Massey's claim for failure to follow post-surgical orders was timely but unsupported by medical evidence.

## II

## DISCUSSION

### A.  Negligent Delay Claim

Mr. Massey claims that he was injured by FCI-Pekin's negligent delay in performing his hernia operation. The district court held that Mr. Massey's claim was time-barred because he failed to present the claim to the BOP within two years after the claim accrued. On appeal, Mr. Massey submits that his claim is not time-barred and that the district court incorrectly determined the date upon which his claim accrued. Mr. Massey argues essentially that he "suffered no injury until [FCI-Pekin's] delay in getting him the

surgery was negligent, a departure from the accepted standard of medical care," and that this negligence did not occur outside of the two-year window. Appellant's Br. at 10. The Government, on the other hand, submits that the district court correctly determined that Mr. Massey's claim accrued no later than January 29, 1997, and therefore is barred by the statute of limitations.[2]

We review a district court's grant of summary judgment de novo. *See O'Neal v. City of New Albany*, 293 F.3d 998, 1003 (7th Cir. 2002). Summary judgment is properly granted on the basis of a statute of limitations defense if "(1) the statute of limitations has run, thereby barring the plaintiff's claim as a matter of law, and (2) there exist no genuine issues of material fact regarding the time at which plaintiff's claim has accrued and the application of the statute to plaintiff's claim which may be resolved in plaintiff's favor." *Green v. United States*, 765 F.2d 105, 107 (7th Cir. 1985) (quoting *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1219 (7th Cir. 1984)). In this case, the statute of limitations has run, and there is no genuine issue of material fact in dispute as to when Mr. Massey's claim accrued.

The FTCA provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years

---

[2]   The Government also submits that Mr. Massey's claim must fail for the additional reason that it is barred by the "discretionary function exception" to the FTCA, which excludes from the Act's application "[a]ny claim based upon an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). However, because we hold that Mr. Massey's claim is barred by the statute of limitations, we need not address this issue.

after such claim accrues." 28 U.S.C. § 2401(b). In *United States v. Kubrick*, 444 U.S. 111 (1979), the Supreme Court established the basic rule with respect to the accrual of an action for medical malpractice under the FTCA. In that case, the Court reversed a Court of Appeals' holding that a medical malpractice claim under the FTCA did not accrue until the plaintiff knew or should have known that the physician who caused the injury was legally blameworthy. *See id.* at 122. In doing so, the Court held that a claim under the FTCA accrues when the plaintiff knows both the existence and cause of his injury, and not at a later time when he also knows that the acts inflicting the injury may constitute medical malpractice. *See id.* at 122-24. The Court stated that, for statute of limitations purposes, a plaintiff's ignorance of his legal rights and his ignorance of the fact of the injury or its cause should not receive equal treatment. *See id.* at 122. The Court further stated that to excuse a plaintiff from properly seeking advice in the medical and legal community by postponing the accrual of his claim "would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government." *Id.* at 123.

Adhering to the Supreme Court's directive, we have held consistently that "[m]edical malpractice claims under the FTCA accrue when a plaintiff has discovered his injury and its probable cause even though he may be ignorant of his legal rights." *Green*, 765 F.2d at 107; *see also Drazan v. United States*, 762 F.2d 56, 58 (7th Cir. 1985); *Jastremski v. United States*, 737 F.2d 666, 669 (7th Cir. 1984). "The statute of limitations does not await the plaintiff's knowledge that his injury was caused by negligence or reckless conduct." *Green*, 765 F.2d at 107. "Once armed with knowledge that he has been injured and by whom, the potential malpractice plaintiff has reason to believe that he may have a legal

claim; and he then has the statutory period in which to conduct the necessary investigation and prepare and file a suit." *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994).

In this case, the district court correctly applied the *Kubrick* standard and determined that, even when all reasonable inferences are drawn in Mr. Massey's favor, "it is apparent that any claims based on the delay in scheduling his hernia operation are time-barred." R.57 at 8. The district court further indicated that, although it was inclined to believe that Mr. Massey's claim accrued sometime during the last three months of 1996, it held that the claim certainly accrued no later than January 29, 1997, because there was no doubt that Mr. Massey had discovered both his injury (the increased pain) and its probable cause (the prison's delay in performing the operation) by that date.

Mr. Massey now challenges the district court's conclusion that his claim accrued no later than January 29, 1997. Mr. Massey admits that, under *Kubrick*, a medical malpractice claim accrues when the plaintiff has discovered his injury and its probable cause. Nevertheless, Mr. Massey contends that the district court misapplied this rule to the facts of his case. First, Mr. Massey submits that he could suffer "no injury until [FCI-Pekin's] delay in getting him the surgery was negligent, a departure from the accepted standard of medical care." Appellant's Br. at 10. It is impossible to discern from Mr. Massey's brief the precise date upon which he believes the prison's delay became negligent; it is clear, however, that he believes that negligence did not occur before February 23, 1997. Second, Mr. Massey submits that any injury he suffered before February 23, 1997, was *de minimis* and therefore did not trigger the statute of limitations. Finally, Mr. Massey submits that the discovery rule should be applied liberally in cases such as his, in which

the plaintiff's claim is premised on the defendant's failure to treat or diagnose. We shall examine each of these contentions in turn.

With respect to Mr. Massey's first argument, to the extent that he is arguing that the statute of limitations did not begin to run until he was aware that the delay in scheduling his surgery amounted to negligence, the Supreme Court's decision in *Kubrick* precludes such a contention. *Kubrick* stands for the proposition that a claim accrues when the plaintiff knows both the existence and probable cause of his injury and not at a later time when he also knows that the acts inflicting the injury may constitute medical malpractice. As the Supreme Court stated, the accrual of a claim does not "await awareness by the plaintiff that his injury was negligently inflicted." *Kubrick*, 444 U.S. at 123.

To the extent that Mr. Massey contends that there is insufficient evidence to establish that he knew of his injury and the cause of that injury no later than January 29, 1997, the record does not support such an argument. Mr. Massey testified that he consulted Dr. Otten about the hernia in the summer of 1996 and that, after speaking to the physician, he believed that the hernia required immediate treatment. At the same time, Mr. Massey testified that the hernia was growing in size and that Dr. Otten informed him that surgery would be scheduled, because "[t]his thing is going to get worse and worse and it's dangerous if it keeps going." R.43, Ex.1 at 34. Mr. Massey also knew that "he was going to get put on a waiting list" and that he "had to stay on top of this." *Id.* at 36. He was concerned about the hernia and wanted the surgery promptly. Over the course of the next three or four months (approximately October 1996 through December 1996) the hernia continued to grow "quite a bit," and began "to really bother" Mr. Massey. *Id.* at 36-37. When asked how the hernia was affecting

him, Mr. Massey replied: "I couldn't sleep on my stomach. When I went over it hurt. I didn't dare try to lift anything heavy. It hurt. Sometimes when I had a bowel movement it hurt. I knew it was there, whereas before like it hurt a little bit when I got to FCI-Pekin but not bad." *Id.* at 38.

Mr. Massey voiced his complaints to Dr. Otten, Samalio and FCI-Pekin nurses. Mr. Massey also complained to his attorney, who in turn sent two letters to the prison's warden. The first letter, dated July 19, 1996, stated that Mr. Massey had "developed a hernia for which he may need surgery," that the prison's advice "don't lift anything" was "hardly an adequate response," that the problem was "serious," that he was "really in pain and in need of the medical attention," and that his "medical needs are not being adequately met." R.43, Ex.2. The second letter, dated January 29, 1997, stated that Mr. Massey had been told by FCI-Pekin physicians that he suffers from "a hernia which needs surgery," that his "hernia keeps growing," that his life was in "serious jeopardy," and that, despite these facts, "no surgery [had been] scheduled." R.43, Ex.3.

The record clearly establishes that Mr. Massey was experiencing increased pain between October 1996 and January 1997 as a result of the prison's delay in performing the operation. Mr. Massey, of course, knew that he did not receive an operation during this time. The facts further demonstrate that Mr. Massey believed he was in need of prompt, if not immediate, surgery and that the surgery was delayed because the prison had not scheduled it. *See Goodhand*, 40 F.3d at 214 ("[T]he statute of limitations . . . begins to run on the date when the plaintiff discovers that he has been injured by an act or omission attributable to the defendant. The plaintiff then has the statutory period to determine whether the act or omission was negligent, and to proceed from there.").

Mr. Massey next submits that his claim did not accrue outside of the statute of limitations because any injury he suffered before February 23, 1997, was *de minimis* and therefore did not trigger the statute of limitations. In support of this argument, Mr. Massey relies on *Goodhand*. In *Goodhand*, the court affirmed the general rule from *Kubrick* that the plaintiff's cause of action accrues once the plaintiff is "armed with knowledge that he has been injured and by whom." *Goodhand*, 40 F.3d at 212. The court went on to state that "[t]he statute of limitations begins to run upon the discovery of the injury, even if the full extent of the injury is not discovered until much later." *Id.* The court explained that "[w]ere it not for this rule, the statute of limitations might be extended indefinitely—perhaps even to death, since until then it is always possible that the plaintiff's injury will worsen." *Id.* Having set forth the general rule, the court then noted that an exception exists "for the case in which at first the injury reasonably seems trivial, and only much later is it discovered to be serious enough to warrant the expense of a precomplaint investigation." *Id.* at 213.

The record in this case simply will not support this characterization. Mr. Massey, both personally and through his attorney, made clear that he believed the failure to schedule the surgery was a serious deprivation that gravely jeopardized his health and was a life-threatening matter. In the letter dated January 29, 1997, Mr. Massey's counsel informed FCI-Pekin of his concern:

> Mike [Mr. Massey] has been told by your prison physicians that he has a hernia which needs surgery. . . . His hernia keeps growing, with no surgery scheduled. . . .
>
> When I wrote to you on July 19, over six months ago, I advised you that I had telephoned the institution re-

peatedly attempting to talk with someone in the medical department but was unable to get a single person to return my phone call. Nor have I received any response from you or anyone on your staff to my July 19, letter. I will not write to you again. I trust that you will address immediately Mike's medical problems . . . I will not stand by and watch Mike's serious medical needs go unattended. . . . his sentence does not require that he die in prison because medical doctors working for the Federal Bureau of Prisons choose to ignore his medical needs.

R.43, Ex.3. As this letter clearly demonstrates, Mr. Massey and his counsel had complained to FCI-Pekin officials on numerous occasions prior to January 29, 1997, about Mr. Massey's hernia and the prison's delay in performing the operation. In addition to this letter, Mr. Massey testified that, after speaking with Dr. Otten, he came to believe sometime in the summer of 1996 that his hernia needed immediate treatment. In light of these facts, the district court did not err in concluding that Mr. Massey's argument was "a dubious attempt to forestall the statute of limitations." R.57 at 8.

Mr. Massey's final argument is that the *Kubrick* rule should be applied liberally to his claim because it is premised on a failure to treat, as opposed to an affirmative act of treatment. Mr. Massey correctly suggests that the *Kubrick* rule has been further refined for cases involving failure to warn, diagnose or treat. For example, in *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983), the plaintiff argued that the failure of Air Force dental surgeons to diagnose and treat a bump on his palate resulted in the progression of the bump from a minor condition to an incurable cancer. The Ninth Circuit held that the progression of the disease, rather than the disease itself, was the injury and that the

plaintiff's cause of action did not accrue until a reasonable person should have "discovered that the failure of his doctors to diagnose, treat, or warn him led to his deteriorating physical condition." *Id.* at 1078; *see also Hughes v. United States*, 263 F.3d 272, 277 (3d Cir. 2001) ("As in *Augustine*, '[t]he issue of accrual in this case thus depends upon when and if plaintiff discovered or through the exercise of reasonable diligence should have discovered that the failure of his doctors to diagnose, treat, or warn him led to his deteriorating condition.' " (quoting *Augustine*, 704 F.2d at 1078)); *Green*, 765 F.2d at 108-09 ("[W]here a claim of medical malpractice arises from the failure to diagnose or treat a patient . . . 'it is only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition that his cause of action can be said to have accrued for purposes of section 2401(b).' " (quoting *Augustine*, 704 F.2d at 1078)).

The approach articulated in *Augustine* cannot govern the situation before us. In *Augustine*, the plaintiff had no reason to suspect that the surgeons' failure to diagnose or treat his injury caused the injury to grow into a more serious condition. Mr. Massey, on the other hand, had reason to suspect, and in fact did suspect, that the delay in performing his hernia operation was the source of his increasing physical distress. He repeatedly brought this belief to the attention of FCI-Pekin officials. Furthermore, Mr. Massey testified that, during the last three or four months of 1996, his hernia became increasingly serious, causing him greater amounts of pain. The district court correctly determined that Mr. Massey's claim began to accrue on or before January 29, 1997.

Under 28 U.S.C. § 2401(b), Mr. Massey had two years from January 29, 1997, to file an administrative tort claim. Because Mr. Massey did not present his claim to the BOP

until February 23, 1999, his claim is barred by the statute of limitations.

**B. Post-Operative Negligence Claim**

Mr. Massey asserts that the January 29, 1998, post-surgical order instructed that he be confined to the prison observation unit for two days and that he be given Vicodin for the pain, but that FCI-Pekin officials disregarded the post-surgical order by sending him back to his prison unit, requiring him to walk to the infirmary for medication and to the dining hall for meals, and substituting Tylenol 3 for Vicodin. Mr. Massey contends that the prison officials' failure to follow the post-surgical order was negligent and caused him needless pain. The district court granted summary judgment on Mr. Massey's claim in favor of the Government, finding that Mr. Massey had failed to support his accusations with medical evidence. On appeal, Mr. Massey submits that the district court should not have granted summary judgment because triable issues of fact remain. The Government, on the other hand, submits that the district court properly granted summary judgment because there was no evidence of negligence or injury.

The FTCA "provides a remedy for personal injury caused by the negligent or wrongful act of any government employee acting within the scope of his employment, 'under circumstances where the United States, if a private person, would be liable to the claimant for the act in accordance with the law of the place' where the act occurred." *Donais v. United States*, 232 F.3d 595, 598 (7th Cir. 2000) (quoting 28 U.S.C. § 1346(b)). Accordingly, Mr. Massey's claim is controlled by the law of the state of Illinois.

"Under Illinois law, in a medical malpractice action, the burden is on the plaintiff to prove (1) the proper standard of care by which a physician's conduct may be measured,

(2) a negligent failure to comply with the applicable standard, and (3) a resulting injury proximately caused by the physician's lack of skill or care." *Id.*; *see also Campbell v. United States*, 904 F.2d 1188, 1191 (7th Cir. 1990); *Simmons v. Garces*, 745 N.E.2d 569, 577 (Ill. App. Ct. 2001); *Diggs v. Suburban Med. Ctr.*, 548 N.E.2d 373, 377 (Ill. App. Ct. 1989). "Unless the physician's negligence is so grossly apparent or the treatment so common as to be within the everyday knowledge of a layperson, expert medical testimony is required to establish the standard of care and the defendant physician's deviation from that standard." *Donais*, 232 F.3d at 598 (quoting *Purtill v. Hess*, 489 N.E.2d 867, 872 (Ill. 1986)).

Applying the foregoing principles to Mr. Massey's claim, it is evident that the district court was correct in granting summary judgment to the Government. Dr. Marshall, the surgeon who performed the operation, and Dr. Robert Ewart, the Government's expert, both testified that there was no breach of due care. Dr. Marshall testified that "Tylenol 3 is in the same level of pain killing medicine" as Vicodin and that he knew, based on his experience, that prisoners who are prescribed pain medicine usually receive Tylenol 3 from the prison formulary. R.43, Ex.4 at 20-21. Dr. Ewart concurred with Dr. Marshall's assessment of Tylenol 3. Specifically, Dr. Ewart testified that "two Tylenol 3 are more or less the equivalent of one Vicodin," and that it "absolutely" was not negligent for prison officials to substitute Tylenol 3 for Vicodin. R.43, Ex.5 at 85.

Similarly, both Dr. Marshall and Dr. Ewart testified that it was not negligent for FCI-Pekin to require Mr. Massey to walk to the infirmary for medication or to the dining hall for food. Dr. Marshall testified that Mr. Massey was not restricted from walking and that his standard protocol was to advise a patient after hernia surgery that he "should do

no lifting" but "can do regular activity." R.43, Ex.4 at 20. Dr. Ewart not only agreed with Dr. Marshall but stated: "I would have thought putting him on bed rest would be negligent" because "[p]eople feel better, they have fewer complications when they get up and get moving." R.43, Ex.5 at 85. Additionally, when asked whether Mr. Massey needed to be kept in the observation unit, Dr. Ewart responded: "I can't really see why. If he was a civilian, he simply would have been sent home." *Id.* at 86.

It was incumbent upon Mr. Massey to substantiate his allegations—that FCI-Pekin officials were negligent and that this negligence caused him physical injury—through expert testimony in order to defeat the Government's motion for summary judgment. He presented no medical evidence to rebut the opinions of Dr. Marshall and Dr. Ewart that the prison officials did not act negligently and that Mr. Massey was not injured by their actions. Mr. Massey's failure to bring forth experts to raise the necessary inferences is fatal to his claim because his allegations, standing alone, cannot create a genuine issue of material fact for trial.

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

A true Copy:

     Teste:

 

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—11-27-02