Omar Reshad BURGESS, a minor by father and next friend, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 83–8727.

United States Court of Appeals, Eleventh Circuit.

Oct. 18, 1984.

Billy G. Fallin, Moultrie, Ga., for plaintiff-appellant.

Gregory J. Leonard, Asst. U.S. Atty., Macon, Ga., Jack Hood, Macon, Ga., for defendant-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and ALLGOOD *, District Judge.

PER CURIAM:

Omar Reshad Burgess, through his father and next friend, brought this suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) and 28 U.S.C. § 2674, for damages allegedly resulting from negligence on the part of Army doctors in connection with his birth. The district court granted the government's motion to dismiss, holding that Burgess had failed to file timely notice of his claim pursuant to 28 U.S.C. § 2401(b) which bars any tort claim against the United States unless it is presented in writing to the appropriate federal agency within two years after such claim accrues. Because we find that Burgess did comply with the requirements of 28 U.S.C. § 2401(b) we reverse and remand for further proceedings.

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Erb's Palsy, or brachial plexus palsy, is defined as paralysis of the muscles of the upper arm (deltoid, biceps, brachialis, anterior, etc.) due to a lesion of the brachial plexus or of the roots of the fifth and sixth cervical nerves. *Stedman's Medical Dictionary,* 21st Edition.

2. It is unclear when the physicians involved learned of appellant's nerve injury. Hospital

## I.  BACKGROUND

Appellant Burgess was born on September 5, 1978 at the United States Army Hospital, Fort Stewart, Georgia. His delivery was complicated when his head emerged but his shoulders could not follow. After several procedures failed, the attending physician finally broke both of appellant's clavicles. The fracture injured the right brachial plexus and caused what is known as Erb's Palsy.[1]

Appellant's parents learned, either on the day of their child's birth or on the next day, that appellant's clavicles had been broken. They did not know at that time that sustained nerve damage would result.[2] In her affidavit, appellant's mother states that while she was fully aware that the child's arm was not functional on September 6, 1978, "she was reassured that all would be okay with her son's arm and she had every reason to believe that it would." Appellant's father states in his affidavit that although he knew of his son's broken bones, "he had no reason to believe there was any permanent injury to his son." Hospital records indicate that, upon her release from the hospital on September 8, 1978, Burgess' mother was instructed on how to perform physical therapy for her son, but these records do not show that she was told of possible damage to the infant's brachial plexus at that time. On September 18, 1978, the physician in charge suggested "counseling and reassurance" for appellant's mother. It was not until the September 29, 1978 entry, however, that the Chronological Report of Medical Care first reflects the physicians' explanation to appellant's parents of the possible nerve damage. On October 4, 1978, the parents

---

records indicate that appellant's condition was in the process of being diagnosed throughout the month of September. Notwithstanding certain records reporting a "normal" birth, this process began as early as September 5, 1978, when one doctor requested a radiological report on appellant. In addition, the discharge record on September 8, 1978, states that the infant has "Total right brachial plexus palsy...." There is no evidence, however, that appellant's parents were privy to this information.

discussed the results of tests with a neurosurgeon. They contend that it was not until these September 29 and October 4 discussions with physicians that they became aware that, because of damage to his right brachial plexus, their son would not fully have the use of his right arm.

On September 3 and September 12, 1980, appellant's attorney sent letters to the Army making a demand for damages. Only the September 12, 1980 letter specified a sum certain in damages.[3] This letter was received by the Army on September 15, 1980. The United States Army Claims Service denied Burgess' administrative claim for failure to file such claim in a timely manner and appellant filed the action giving rise to this appeal. The United States moved to dismiss based on lack of subject matter jurisdiction; this motion was granted by the district court. The district court ruled that the actionable injury, if any, was the breaking of appellant's clavicles which took place at the time of his birth. The court further found that appellant's parents knew that the clavicles were broken and that their child's arm was not functioning properly as of September 6, 1978, and that such knowledge was all that was required for the statute of limitations to begin to run.

## II. PERIOD FOR FILING FTCA CLAIM AND STATUTE OF LIMITATIONS

The government argues, and appellant concedes, that Burgess' claim is controlled by the two-year statute of limitations of 28 U.S.C. § 2401(b). That section provides in relevant part:

A tort against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues ....

The disputed issue here is when the claim accrued.

This court has adopted the general rule that claims for malpractice under the FTCA accrue when a claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice. *Coyne v. United States,* 411 F.2d 987 (5th Cir.1969); *Beech v. United States,* 345 F.2d 872 (5th Cir.1965); *Quinton v. United States,* 304 F.2d 234 (5th Cir.1962).[4] *See also Waits v. United States,* 611 F.2d 550 (5th Cir.1980). This approach, followed by a number of other circuits,[5] recognizes that injury in

---

**3.** Appellee claims that only the September 12, 1980 notice was valid because the first notice failed to designate a sum certain as required by 28 C.F.R. § 14.2(a) which provides:

(a) For purposes of the provisions of 28 U.S.C. § 2401(b) and 2672, a claim shall be deemed to have been presented when a Federal agency *receives* from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a *sum certain* for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident. (emphasis added)

While we agree with appellee that the first notice was invalid, our decision in this case makes the validity of the first notice inconsequential. In addition, both notices were *received* after September 6, 1980, more than two years after appellee claims the statute of limitations began running.

**4.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**5.** *See Sanders v. United States,* 551 F.2d 458 (D.C.Cir.1977); *Casias v. United States,* 532 F.2d 1339 (10th Cir.1976); *Reilly v. United States,* 513 F.2d 147 (8th Cir.1975); *Jordan v. United States,* 503 F.2d 620 (6th Cir.1974); *Portis v. United States,* 483 F.2d 670 (4th Cir.1973); *Tyminski v. United States,* 481 F.2d 257 (3d Cir.1973); *Toal v. United States,* 438 F.2d 222 (2d Cir.1971); *Hungerford v. United States,* 307 F.2d 99 (9th Cir.1962). *See also* Restatement (2d) of Torts § 889, comment e, p. 444–445 (1979) which states:

One group of cases in which there has been extensive departure from the earlier rule that a statute of limitations runs although the plaintiff has no knowledge of the injury has involved actions for medical malpractice. Two reasons can be suggested .... One is the fact that in most instances the statutory period within which the action must be initiated is short—one year, or at most two, being the common time limit. This is for the purpose of protecting physicians against unjustified claims; but since many of the consequences of medical malpractice often do not become known or apparent for a period longer than that of the statute, the injured plaintiff is left

medical malpractice cases may not manifest itself until many years after the event which causes the injury. The rule is based on the Supreme Court decision in *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), in which the Court held that a claim under the Federal Employers Liability Act did not accrue until the plaintiff's injury manifested itself because of the "unknown and inherently unknowable" effects of silica dust. *Id.* at 169, 69 S.Ct. at 1024. The Court found that the claimant should not be barred because of his "blameless ignorance." *Id.* at 170, 69 S.Ct. at 1024. In the more recent case of *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Supreme Court refined this standard. Distinguishing knowledge of the existence and cause of any injury from knowledge of legal rights pursuant to that injury, the Court found that only knowledge of the cause and existence of an injury is required before the statute of limitations begins running in a FTCA claim.[6] This distinction was based on what the Court deemed knowable by the claimant:

> That he had been injured in fact may be unknown or unknowable until the injury

manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain.

*Id.* at 122, 100 S.Ct. at 359.

In the present case, it is precisely the appellant's parents' inability to know the *existence* of appellant's injury that is at issue. Appellee claims that the only injury to appellant was the breaking of his clavicles on September 5, 1978, which the parents had knowledge of by September 6, 1978, and that knowledge of permanent injury as a result of the broken bones is irrelevant to the running of the statute of limitations. This Court finds, however, that the injury in question is the damage to the infant's right brachial plexus which caused Erb's Palsy. Although the injury to the brachial plexus occurred on September 5, 1978, when the infant's bones were broken, the record supports appellant's contention that his parents were not aware of this injury and the resulting nerve damage until at least September 29, 1978.[7] Nothing that appellant's parents were told prior to that date would lead a reasonable person to suspect that the breaking of the

---

without remedy. The second reason is that the nature of the tort itself and the character of the injury will frequently prevent knowledge of what is wrong, so the plaintiff is forced to rely upon what he is told by the physician or surgeon....

[A] wave of recent decisions [have held] that the statute must be construed as not intended to start to run until the plaintiff has in fact discovered the fact that he has suffered injury or by exercise of reasonable diligence should have discovered it.

6. *Kubrick* concerned a veteran who received treatment with neomycin following surgery in a Veterans Administration hospital in April of 1968. Approximately six weeks after discharge, Kubrick began noticing hearing difficulties. In January of 1969, he was told by a physician that it was highly possible that the hearing loss was the result of neomycin treatment. However, Kubrick waited until 1971, when the same physician told him that the neomycin had caused his injury and that he should seek legal advice, before he filed a claim with the government. The Court, in finding that the claim was barred, held that Kubrick's claim had accrued in January of 1969 when he was told by a physician

that his hearing loss was probably the result of a neomycin treatment. It bears noting that the government in *Kubrick* did not contend that the claim accrued at the time of the neomycin treatment nor at the time Kubrick noticed a hearing loss. Rather, the government contended that Kubrick's claim accrued when he was told of the probable cause of his hearing loss by a physician.

7. The only indication in the record suggesting that appellant's parents may have known that there was "permanent" damage to their son prior to September 29, 1978 is found in the affidavit of Stephen M. Collins, Claims Attorney in the Office of the Staff Judge Advocate who states in his affidavit:

> In the investigation of this case ... I asked Sgt. and Mrs. Burgess when they had first been told by the hospital staff that Omar might have received a permanent injury when his clavicles were broken in delivery. They both, without equivocation, stated that they were told prior to leaving the delivery room after Omar's birth. This would have been 5 September 1978.

We do not find this assertion persuasive as to knowledge of Erb's Palsy.

clavicle would cause Erb's Palsy.[8] Rather, any information concerning the nerve damage was within the exclusive knowledge of the government's physicians at that time. The Burgesses acted reasonably in relying upon the government's representations and assurances concerning appellant's condition. Thus, since appellant's parents did not know of the *existence* of the injury until the physicians made them aware of it on September 29, 1978,[9] the statute of limitations commenced running at that time and appellant properly filed his claim within the two-year period.

For the foregoing reasons, the judgment of the district court is REVERSED and REMANDED for a trial on the merits of Burgess' malpractice claim.

---

8. Hospital records indicate that appellant's mother was informed of physical therapy procedures regarding appellant's arm at the time she left the hospital on September 8, 1978. The record does not support a finding, however, that physical therapy is an unusual requirement following a bone fracture which would place a reasonable person on notice of nerve injury or other permanent injury.

9. The present case is distinguishable from cases cited by appellee where the claimant knew of the existence of the injury for which he sought redress, but not the extent or permanence of it. In *Robbins v. United States,* 624 F.2d 971 (10th Cir.1980), claimant knew almost five years before making his administrative claim that he had developed marks called "stria" and that they might not go away. All he learned at the time

he claims the statute commenced was that the marks might be permanent. Similarly, in *Ashley v. United States,* 413 F.2d 490 (9th Cir.1969), claimant knew on the date of injury that something had gone wrong with his medical treatment; no unknowable consequences developed at a later time. Finally, in *Hulver v. United States,* 562 F.2d 1132 (8th Cir.1977), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978), *reh'g denied,* 436 U.S. 923, 98 S.Ct. 2275, 56 L.Ed.2d 765 (1978), evidence proved that claimant knew of the injury that he sought redress for more than two years before the filing of his claim.

