151 F.3d 1032
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Charles T. HATCH, Plaintiff-Appellant,
v.
Jerry D. GILMORE and Marlene Guthrie, Defendants-Appellees.
 No. 97-2531.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 14, 1998.*
Decided May 15, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied Aug. 10, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois, Peoria Division, No. 95 C 1226, Michael M. Mihm, Chief Judge.
 Before Hon. JOEL M. FLAUM, Hon. MICHAEL S. KANNE, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Prisoner Charles Hatch filed an action under 42 U.S.C. § 1983 against Jerry Gilmore, Marlene Guthrie, and Dr. Lee,[1] who are respectively the former warden, health care unit administrator, and staff physician at Hill Correctional Center in Galesburg, Illinois. Hatch alleged that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. The district court held that Hatch's essential claims were time-barred and granted the defendants' motion for summary judgment. Since Hatch's claims accrued more than two years before he filed his complaint, we affirm.
 
 Background
 
 2
 Charles Hatch is incarcerated at the Hill Correctional Center in Galesburg, Illinois. Hatch was first diagnosed with and treated for glaucoma by the Hill optometrist in 1991. Two years later, in February 1993, a Hill physician examined Hatch and referred him to an eye specialist in Peoria. The specialist examined Hatch and referred him to another specialist in Peoria. An appointment to see the new specialist was scheduled for March 29, 1993. Defendants Gilmore and Guthrie approved Hatch for a medical furlough for that date. On March 29, as Hatch was set to leave the prison for his appointment, corrections officer Jeff McCue escorted Hatch to the shakedown room and ordered Hatch to remove his clothes. Hatch complied. McCue then ordered Hatch to bend at the waist and spread his buttocks with his hands. Hatch refused, stating that it was "against his religion to touch himself in that manner" (Appellant Br. at 5) and proposing that he squat and cough instead. Two other officers repeated the order, but Hatch continued to refuse. Consequently, Gilmore canceled Hatch's medical furlough.
 
 
 3
 On May 12, 1993, a Hill physician examined Hatch's eyes and again referred Hatch to the eye specialist. On May 14, Guthrie summoned Hatch to her office. Guthrie told Hatch that security procedures must be followed before he could be approved for a medical furlough. Hatch reiterated that he did not wish to submit to a rectal search. Guthrie requested that Hatch sign a "Refusal of Treatment" form stating:
 
 
 4
 Dr. Halasz has explained to me the risks, possible complications and probable consequences of refusing treatment (and/or) demanding discharge from this medical facility. I hereby release the Attending Physician, the Hill CC/CMS Medical Facility, the Institution and the Department of Corrections from all liability for any injury to my health caused by this action.
 
 
 5
 Hatch refused to sign the form. Guthrie advised Hatch that his furlough would be rescheduled "when he agreed to comply with Security." Appellant Br., App. F at 3.
 
 
 6
 On September 19, 1993, Hatch requested to see an eye doctor. Hatch told a nurse that the vision in his left eye was becoming worse. The nurse noted Hatch's request, but no referral was made. Hatch returned to the medical unit on October 5, 1993, complaining of a severe migraine headache. Again, no referral was made. On March 8, 1994, Hatch informed the medical unit that he had gone entirely blind in his left eye and that his vision had become blurred in his right eye. Dr. Lee, the Hill staff physician, told Hatch that he could find nothing wrong with his eyes but would schedule him to see an eye doctor. Hatch returned to the clinic on March 14, where Dr. Davis, another staff physician, informed him that Dr. Lee had not scheduled an appointment with an eye doctor and had also reduced Hatch's eye drop dosage. Dr. Davis increased the dosage to its previous level.
 
 
 7
 On April 6, 1994, Hatch's medical furlough was rescheduled, over a year after the initial cancellation. As Hatch was set to leave for Peoria, the corrections officer again ordered Hatch to strip, bend over and spread his buttocks. Hatch refused, but this time he was allowed to squat and cough instead. Numerous furloughs were scheduled thereafter, and on each occasion the officers permitted Hatch to squat and cough. An operation on August 1, 1994 saved Hatch's right eye from going blind; a few days later the eye specialist informed Hatch that if he had been able to operate on the left eye a year earlier, he could have saved it too.
 
 
 8
 On June 6, 1995, Hatch filed a complaint against numerous correctional officials and health care providers at Hill, including correctional officer McCue. Hatch claimed that the strip search of March 29, 1993 violated his Fourth Amendment rights, and that the cancellation of his furlough had constituted cruel and unusual punishment in violation of the Eighth Amendment. Hatch also alleged that on various occasions between 1989 and 1993 Hill officials and health care providers subjected him to unsafe conditions, denied him due process in prison disciplinary proceedings, and forced him to work without pay. On June 6, 1996, the district court granted summary judgment in favor of most of the defendants, ruling that any allegation pre-dating June 6, 1993 was time-barred because of the two-year statute of limitations, but that "the record w[ould] require further development concerning the provision (or denial) of medical care after that date."
 
 
 9
 On June 28, 1996, Hatch filed an amended complaint in which he named as defendants only Gilmore, Guthrie and Dr. Lee. According to the amended complaint, the alleged violation of Hatch's rights had begun with the incidents of March 29, 1993 and May 14, 1993. On May 13, 1997, the district court granted summary judgment in favor of Gilmore and Guthrie. The court ruled that the allegations pertaining to the incidents of March 29, 1993 and May 14, 1993 were time-barred. The court also concluded that neither Gilmore nor Guthrie knew of Hatch's serious medical condition, that neither of them was responsible for scheduling medical furloughs and, therefore, that neither of them acted with deliberate indifference to Hatch's medical needs.
 
 
 10
 In its May 13, 1997 order, the court informed Hatch that the complaint would be dismissed as to Dr. Lee for want of service within fourteen days. Hatch did not respond, and on June 6, 1997, the court dismissed all claims against Dr. Lee. Hatch now appeals the dismissal of the complaint as to Gilmore and Guthrie.
 
 Analysis
 
 11
 A § 1983 action is subject to "the statute of limitations governing personal injury claims in the state where the alleged injury occurred." Sellars v. Perry, 80 F.3d 243, 245 (7th Cir.1996) (citing Wilson v. Garcia, 471 U.S. 261, 280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). The applicable statute of limitations in Illinois is two years. Federal law determines when a § 1983 claim accrues; state law determines the period of limitations and governs if questions of tolling arise. Id.; Dixon v. Chrans, 986 F.2d 201, 203 (7th Cir.1993).
 
 
 12
 The district court held that Hatch's allegations pertaining to the canceled furlough accrued on March 29, 1993 and May 14, 1993, and that the allegations were time-barred because they took place more than two years before Hatch filed his complaint. Hatch pointed to an Illinois law that treats imprisonment as a legal disability that tolls the statute of limitations while the plaintiff is still in prison. See Ill.Rev.Stat. ch. 110, p 13-211 (1987). On the basis of this law, Hatch argued that the statute of limitations should be tolled. The defendants pointed out that in 1987, the Illinois legislature amended the law in question and established an exception to the tolling rule for claims by prisoners that were directed against the Illinois Department of Corrections ("IDOC") or its employees. See Act of Nov. 23, 1987, Pub. Act 85-907, art. II, sec. 1, p 13-211, 1987 Ill Laws 3832 ("the 1987 amendment").
 
 
 13
 Hatch directed the district court's attention to Dixon. In that case, a prisoner's claims had been dismissed on the basis of the 1987 amendment. On appeal, we found that the 1987 amendment was "inconsistent with the purposes of § 1983, which are prevention of the abuse of state power and compensation for violations of constitutional rights." Dixon, 986 F.2d at 205. Therefore, we declined to give effect to the 1987 amendment. Id.
 
 
 14
 Hatch's argument failed to sway the district court. The court pointed out that in 1991, Illinois had "deprived prisoners altogether of tolling benefits for any causes of action." See Dist.Ct. Order of 6/10/96, at 4. The court cited earlier Seventh Circuit caselaw to the effect that the "withdrawal of tolling provisions for prisoner claims is rationally related to a legitimate governmental interest." Id. at 5 (citing Wilson v. Giesen, 956 F.2d 738, 742 (7th Cir.1992)). See also Delgado-Brunei v. Clark, 93 F.3d 339, 342 (7th Cir.1996) (reviewing 1991 changes in Illinois' rules for prisoner litigation). Therefore, the court refused to toll the statute of limitations.
 
 
 15
 On appeal, Hatch no longer raises the tolling issue; rather, he argues that his claims accrued not during the spring of 1993 when his furlough was canceled, but during the summer of 1994, when the eye specialist informed him that his vision might have been saved if the furlough had not been canceled. Hatch maintains that he only "discovered" the harm done to him at that date.
 
 
 16
 The general rule regarding the accrual of the statute of limitations is that the statute begins to run upon the discovery of the injury, even if the full extent of the injury is not discovered until much later. See Goodhand v. United States, 40 F.3d 209, 212 (7th Cir.1994). "Were it not for this rule, the statute of limitations might be extended indefinitely--perhaps even to death, since until then it is always possible that the plaintiff's injury will worsen." Id. Two exceptions to the general rule exist. First: When the plaintiff's injury initially seems trivial, and only later is discovered to be serious enough to warrant the expense of litigation, the date of accrual will be set at the later date. Id. at 214. Second: If the defendants have "lulled" or attempted to discourage the victim from suing, "they may be estopped to plead the statute of limitations if the victim acts reasonably in light of the situation as it has been made to appear to him by the defendants." Id.
 
 
 17
 Hatch qualifies for neither exception. He had been suffering from glaucoma for two years. The necessity of his furlough had been clearly explained to him by the Hill medical staff and the first specialist in Peoria, in February 1993. Therefore he knew not only that he had been injured by the cancellation of his furlough, as well as by the failure to reschedule the furlough, but also that this injury was not trivial. In addition, Hatch has failed to provide any evidence indicating that Hill officials attempted to discourage him from suing. At the very latest, he was alerted on May 14, 1993 to the possibility of bringing suit when Guthrie requested that he sign a release from liability form. That he refused to sign this form strongly suggests that he knew of the likelihood that he had been injured.
 
 
 18
 Hatch's claims pertaining to the incidents of March 29, 1993 and May 14, 1993 accrued on May 14, 1993 at the latest. Hatch has failed to raise the issue of whether the statute of limitations should have been tolled. Therefore we affirm the district court's ruling that Hatch's allegations regarding events preceding June 6, 1993 are time-barred. Since Hatch has failed to present any material issue of fact regarding the conduct of Gilmore and Guthrie following those dates, we affirm the district court's decision in its entirety.
 
 AFFIRMED
 
 
 *
 After an examination of the briefs and record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 While Hatch's amended complaint named Kenneth McGinnis, former Director of the Illinois Department of Corrections, as a defendant in the caption, in fact the complaint states claims against only Gilmore and Guthrie. We have amended the caption to show that Hatch brings this appeal against only Gilmore and Guthrie. See Collins v.. Kibort, --- F.3d ---- No. 97-2332, 1998 WL 214540 at * 3 (7th Cir., May 1, 1998)