In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2467

EUGENE DEVBROW,

*Plaintiff-Appellant,*

*v.*

DR. EKE KALU, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:07-cv-1355-LJM-TAB—**Larry J. McKinney**, *Judge.*

ARGUED OCTOBER 31, 2012—DECIDED FEBRUARY 1, 2013

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and
SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. This case arises out of a delay by
prison medical staff in ordering a prostate biopsy for a
prisoner. Eugene Devbrow entered the Indiana prison
system in 2000. During the intake process, he told the
medical staff that he had prostate problems and would
need to be tested for prostate cancer within two to
four years. In February 2004 a prison doctor ordered
a PSA test (for "prostate-specific antigen"), which

revealed an elevated PSA, but the medical staff did not order a prostate biopsy until April 2005. In a follow-up biopsy six months later, Devbrow was diagnosed with prostate cancer, but by that time the disease had spread to his spine and treatment options were severely limited.

In October 2007 Devbrow sued two prison doctors and a prison nurse practitioner under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. He alleged that their long delay in ordering a biopsy prevented the discovery of his cancer while the odds of successfully treating it were still good. The district court entered judgment for the defendants based on the two-year statute of limitations. The court construed the claim as a continuing constitutional violation that began in February 2004—when, according to Devbrow, his PSA test and prostate history showed the need for a biopsy—and ended in April 2005 when the biopsy was ordered. At that point, the court said, the defendants' deliberate indifference ceased, the cause of action accrued, and the limitations clock started ticking. Because Devbrow filed suit more than two years later, the court dismissed it as untimely.

We reverse. The statute of limitations for a § 1983 deliberate-indifference claim brought to redress a medical injury does not begin to run until the plaintiff knows of his injury and its cause. Judged by that standard, Devbrow's suit is timely. He did not know of his injury in April 2005 when the defendants finally ordered a biopsy; he discovered it six months later

when he learned he had cancer that might have been diagnosed and treated earlier but for the defendants' deliberate indifference. The limitations period runs from that discovery, and Devbrow filed suit just before the time expired.

## I. Background

The following account is limited to the facts that are relevant to the statute-of-limitations question, construed in the light most favorable to Devbrow. *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011); FED. R. CIV. P. 56(a). Even before he went to prison in 2000, Devbrow knew he was at risk for prostate cancer. In 1998 a PSA test revealed elevated prostate-specific antigen levels. A follow-up biopsy was benign, but his doctor advised him to have another test in two to four years. In the meantime Devbrow was convicted of a crime and sentenced to prison by an Indiana court. When he arrived at the Pendleton Correctional Facility in May 2000, he told the intake physician about his prostate history and that his doctor recommended cancer screening within two to four years. Four years later, on February 3, 2004, a prison doctor ordered a PSA test, and the result—a PSA of 13.3 ng/mL—was significantly elevated above the level considered to be normal. Nurse Practitioner Kelley Carroll requested a urology consultation, but Dr. Eke Kalu, the Regional Medical Director for Prison Health Services, would not authorize it.

The test was repeated a week later, and again revealed an elevated PSA of 14.1. Dr. Malak Hermina examined

Devbrow, found his prostate enlarged, and requested a urology consultation. Dr. Kalu again did not authorize it, but told Dr. Hermina to obtain Devbrow's outside medical records. Dr. Hermina began that process and also ordered an on-site ultrasound. Devbrow had the ultrasound in early March and met with Dr. Hermina to discuss the results. Based on the test results and his clinical examination, Dr. Hermina again recommended a urology consultation. Dr. Kalu again denied it and instead treated Devbrow for benign prostate hyperplasia.

Devbrow did not have another PSA test until a year later, on February 10, 2005, and by this time his PSA level had risen to 18.1. Dr. Hermina again requested a urology consultation and also recommended a biopsy. Devbrow was taken to the hospital to see a urologist and on April 27, 2005, had a prostate biopsy, which revealed high-grade prostatic intraepithelial neoplasia, a precursor to prostate cancer. A follow-up biopsy on September 25, 2005, confirmed that Devbrow had prostate cancer. According to Devbrow's account of the facts, which we accept at this stage and the defendants do not dispute "for purposes of the statute of limitations," he received the cancer diagnosis on October 21, 2005. A bone scan in December revealed that the cancer had spread to Devbrow's spine and no longer was operable. Devbrow learned of the metastasis on December 16, 2005. Treatment options for metastatic prostate cancer are limited, and the ten-year survival rate is less than 15%.

On October 19, 2007, Devbrow sued Drs. Kalu and Hermina and Nurse Practitioner Carroll under § 1983 for

deliberate indifference to his medical needs in violation of the Eighth Amendment. He alleged that their delay in ordering a prostate biopsy prevented the diagnosis of his cancer until after it had metastasized. Hermina and Carroll moved for summary judgment, arguing that Devbrow's suit was untimely under the two-year statute of limitations. Kalu moved to dismiss on the same ground. The district court granted the motions, holding that the limitations period commenced on April 27, 2005, when Devbrow was referred for a biopsy. At this point, the court held, the defendants ceased being indifferent to his medical needs and the statute of limitations started to run. Counting the time from that date, Devbrow's suit was six months too late. The court entered judgment for the defendants, and this appeal followed.

## II. Discussion

For claims brought under § 1983, we borrow the limitations period and tolling rules applicable to personal-injury claims under state law. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The pertinent Indiana statute of limitations is two years. *Id.;* IND. CODE § 34-11-2-4. Accrual rules, however, are governed by federal law "conforming in general to common-law tort principles." *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007). There is no single accrual rule for all § 1983 claims. Rather, we use the rule that applies to the common-law cause of action most similar to the kind of claim the plaintiff asserts. *Id.* at 388 (drawing on the "distinctive treatment of the torts of false arrest and false imprisonment, the causes of action

that provide the closest analogy to claims of the type considered here" (internal quotation marks and alterations omitted)).

The tort claim most closely analogous to a deliberate-indifference claim premised on a medical error is medical malpractice. Thus, in a recent case asserting a § 1983 claim for deliberate indifference based on the failure of prison physicians to render needed medical care to a prisoner, we applied the statute-of-limitations analysis applicable to medical-injury claims under the Federal Tort Claims Act. *See Richards*, 696 F.3d at 637. In *Richards*, as here, the plaintiff was an Indiana prisoner. Starting in January 2008, he complained to prison doctors of abdominal pain and blood in his stool, but they "assured him that he was fine." *Id.* at 636. In October 2008 they finally referred him to a specialist, who promptly diagnosed ulcerative colitis. By that time, however, the only solution was to remove his lower digestive tract. In December 2010 the prisoner sued the prison physicians, and they moved to dismiss based on the two-year statute of limitations. The district court granted the motion, but we reversed. *Id.* at 637-38.

We began by noting that in claims brought under § 1983, "[f]ederal law defines when a claim accrues, . . . and the federal rule for medical errors is that a claim accrues when a person knows his injury and its cause." *Id.* at 637. For this principle we cited *United States v. Kubrick*, 444 U.S. 111 (1979), a case involving a medical-malpractice claim brought under the Federal Tort Claims Act. *Id.*; *see also Goodhand v. United States*, 40 F.3d 209, 212-14 (7th

Cir. 1994) (explaining accrual rules for medical-injury claims under the Federal Tort Claims Act). Applying the rule from *Kubrick*, we held that the two-year limitations period commenced October 2008 when Richards was diagnosed with ulcerative colitis. At that point he knew "that he had ulcerative colitis that defendants had failed to detect, causing him to lose his lower gastro-intestinal tract and anus." *Richards*, 696 F.3d at 637. Accordingly, *Richards* illustrates that for a § 1983 claim based on medical injury arising from deliberate indifference, the relevant injury for statute-of-limitations purposes is not the intangible harm to the prisoner's constitutional rights but the physical injury caused by the defendants' indifference to the prisoner's medical needs.

The dispute in *Richards*, however, centered on tolling principles and pleading standards, not accrual rules; the date of accrual was uncontested. *See id.* at 637-38. Accordingly, our discussion of when a deliberate-indifference claim accrues cannot be characterized as a holding. We adopt it as holding now. A § 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs accrues when the plaintiff knows of his physical injury and its cause. The statute of limitations starts to run when the plaintiff discovers his injury and its cause even if the full extent or severity of the injury is not yet known. *See Goodhand,*

40 F.3d at 212.[1] In certain circumstances the limitations period may commence *later* than the date of discovery (more on that in a moment), but it does not begin any *earlier* than the date on which the plaintiff knows of his physical injury and its cause.

Applying that general rule here, the accrual date is no different than in *Richards*. Devbrow alleges that the defendants were deliberately indifferent to his medical needs by unnecessarily delaying a biopsy and thus preventing the diagnosis of his prostate cancer until it had already spread to the bone.[2] Like Richards, Devbrow

---

[1] We explained in *Goodhand* that "[t]his is a general principle of limitations law, not an idiosyncratic feature of the statute of limitations in the Federal Tort Claims Act." *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994). The principle is subject to several important qualifications, notably for cases involving an injury that "seems trivial, and only much later is it discovered to be serious enough to warrant the expense of a precomplaint investigation," and also for cases involving "lulling efforts by the defendants." *Id*. at 212-13. These qualifiers may or may not apply here, but because we resolve this case under the general discovery rule, we need not address them.

[2] Although we do not have the merits of Devbrow's claim before us, we note that testing protocols for prostate cancer are the subject of debate within the medical profession. *See, e.g.,* VIRGINIA A. MOYER, ON BEHALF OF THE U.S. PREVENTIVE SERVICES TASK FORCE, *Screening for Prostate Cancer: U.S. Preventive Services Task Force Recommendation Statement*, 157 ANNALS OF INTERNAL MED. 120 (July 17, 2012); American Urological

(continued...)

learned of his injury and its cause when the disease was diagnosed. He received the cancer diagnosis on October 21, 2005, and he learned of the metastasis on December 16, 2005. The two-year limitations period thus started no earlier than October 21, 2005, and perhaps as late as December 16, 2005. Either way, the suit—filed on October 19, 2007—is timely.

The defendants argue that the limitations period began earlier, on April 27, 2005, as the district court held. As of that date, they contend, the deliberate indifference ceased and Devbrow could have sued for nominal or presumed damages even without a physical injury. It is true that a prisoner may obtain nominal damages for an Eighth Amendment deliberate-indifference violation in the absence of a compensable physical injury; actual damages are not an element of the claim. *See Cotts v. Osafo*, 692 F.3d 564, 569 (7th Cir. 2012) ("Damages are not an element of liability in a deliberate indifference claim."). And a prisoner may also bring an Eighth Amendment claim when the deliberate indifference of prison officials creates a likelihood of future harm even if no actual harm is presently manifested. *See Helling v. McKinney*, 509 U.S. 25, 31-35 (1993).

But accrual rules are applied to the substance of the claim before the court, and *this* deliberate-indifference claim seeks redress for a concrete physical injury, not

---

[2]   (...continued)

Association, *Prostate-Specific Antigen Best Practices Statement: 2009 Update*, http://www.auanet.org/content/media/psa09.pdf.

probabilistic future harm or an abstract injury for which nominal damages are available as a remedy. *See Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996) ("A Section 1983 claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of his action."). Here, Devbrow alleges that the defendants' deliberate indifference delayed the diagnosis of his cancer until after it had metastasized. Devbrow did not know *of that* injury any sooner than October 21, 2005, when he received the cancer diagnosis.

The defendants also rely on *Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir. 2001), but that case does not affect the result here. Our decision in *Heard* involved an application of the "continuing violation" doctrine. The plaintiff, an inmate in the Cook County jail, complained of pain for months, suspecting a hernia, but jail officials did not offer him any treatment. He was eventually examined by the jail physician, who diagnosed a ruptured hernia and recommended surgery, but jail officials refused to act on the recommendation. *Id.* at 317. After he was released from jail, he sued the jail officials for deliberate indifference to his medical needs in violation of the Eighth Amendment. The district court dismissed the suit as untimely, concluding that the statute of limitations started to run the moment the plaintiff knew he had a medical condition that needed treatment; counting from that date, the two-year limitations period expired long before he filed suit. *Id.* at 318.

We reversed, construing the claim as a continuing constitutional violation that persisted for the duration of

the inmate's confinement in the jail. The jail officials were aware of his need for treatment and refused to do anything about it, and "[t]his refusal continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail." *Id.* "Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew." *Id.* The inmate sued the jail officials within two years after he was released, so we held that his suit was timely. *Id.* at 318-19.

*Heard* thus holds that when the violation of the plaintiff's constitutional rights is a continuing one, the statute of limitations does not start to run *any earlier* than the last day of the ongoing injury. *Id.* at 319 ("'[T]he cause of action accrues at . . . the date of the last *injury*.'" (emphasis added) (alteration in original) (quoting *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1237 (10th Cir. 2001))). The continuing nature of the violation in *Heard* meant that the limitations period did not commence when the inmate first discovered his medical problem, but later, when his constitutional rights were last violated—that is, when he left the jail. In other words, the continuing-violation doctrine operates to *delay* the start of the limitations period. *Id.* A contrary rule, we explained in *Heard,* would encourage the proliferation of protective lawsuits. *Id.* at 320 ("We have enough prisoners' suits without having to create incentives to bring multiple suits arising out of the same course of events."). Accordingly, *Heard* does not support the defendants' argument that Devbrow's limita-

tions clock started ticking before he knew he had prostate cancer.[3]

The claim asserted here involves an actual physical injury, not an abstract or intangible one. Devbrow contends that the defendants' deliberate indifference delayed the diagnosis of his cancer until after it metastasized, foreclosing successful medical intervention. He learned of that injury no earlier than October 21, 2005, when he received his cancer diagnosis. He filed this suit on October 19, 2007, almost two years later and just before the statute of limitations expired.

REVERSED.

---

[3] Because *Heard* does not apply here, we do not address the extent to which our decision in that case has been affected by the Supreme Court's reasoning in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), and *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).