NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 11, 2020[*]
Decided May 15, 2020

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-3048

| | |
|---|---|
| RAYMOND E. KING, <br>     *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 09 C 1184 |
| STEVEN NEWBOLD, et al., <br>     *Defendants-Appellees.* | Sidney I. Schenkier, <br> *Magistrate Judge.* |

**O R D E R**

Raymond King, an Illinois inmate at high risk for lockjaw, sued prison dentists under the Eighth Amendment for their deliberate indifference to his medical condition. The district court entered summary judgment for the defendants on most claims and dismissed one as time-barred. We vacate and remand with respect to one defendant because a jury reasonably could conclude that this defendant recklessly ignored King's serious need for oral surgery. For all other defendants, we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

We take the facts and draw all reasonable inferences in favor of King, the nonmoving party. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 963 (7th Cir. 2019). Following injuries to his face in the 1990s, King developed temporomandibular joint disfunction (TMJ), a condition that causes jaw muscles to deteriorate and, if left untreated, lockjaw. While on trial for a criminal charge in 2004, King reinjured his jaw. Post-conviction, Dr. Steven Newbold, a dentist at Menard Correctional Center in Illinois, examined King and decided that he needed a mouth guard for his TMJ and pain. (He also x-rayed King's mouth and found no "definite" signs of fracture.) Dr. Newbold delayed fitting King for the mouth guard for six months, despite his frequent complaints of steady pain and swelling. King received the mouth guard in April 2005, and some months later Dr. Newbold referred him to Menard's medical director for more evaluation.

Over the next two years, King's jaw deteriorated, eventually necessitating an exam by an oral surgeon. King complained of chronic jaw pain at an appointment in June 2006 with Dr. Newbold. No further tests or treatment for his TMJ occurred in the next nine months. King's pain and swelling worsened, though, and in March 2007, another dentist evaluated him. This doctor diagnosed King with a tight jaw, swollen face, and bloody mouth; soon after, King lost his ability to chew and eat solid food. These events led Menard's dental director to order a CT scan which revealed loose bone fragments in King's jaw. This director referred King to an oral surgeon.

To meet with the oral surgeon, King was transferred to Stateville Correctional Center (also in Illinois) in September 2007 and placed under the care of two new doctors: Stateville's medical director and Dr. Jacqueline Mitchell-Lawshea, its dental director. On September 26, the oral surgeon recommended to Dr. Mitchell-Lawshea that King receive jaw-replacement surgery for his TMJ. Despite receiving this recommendation and knowing about King's history of jaw deterioration, Dr. Mitchell-Lawshea never asked the medical director (the only one who could authorize surgery) to refer King for surgery. Over the next three weeks, as King's pain persisted, he repeatedly asked for dental care, but received none. On October 19, King's jaw locked shut. He went to the emergency room that day, where a doctor recommended an MRI and another oral-surgery exam. The medical director then referred King for the surgery.

A half year later, King received the jaw-reconstruction surgery, and afterward, physical therapy. When, over the next two years, his pain still worsened and his jaw began locking up again, King had follow-up visits with his surgeon and a pain

specialist. Dr. Mitchell-Lawshea and two other Stateville dentists also saw King at times and provided palliative care prescribed by the medical director and the oral surgeon.

King sued in February 2009, contending that since 2004 medical staff at Menard and Stateville had been deliberately indifferent to his need for TMJ care. As relevant to this appeal, he named Dr. Newbold, Dr. Mitchell-Lawshea, and two other Stateville dentists as defendants. (King also sued Stateville's medical director, but those claims have settled.) The standard for surviving a motion for summary judgment on a claim for deliberate indifference to a medical need is familiar: King needed to present evidence that (1) his need was objectively serious, and (2) the defendants consciously disregarded it. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). A magistrate judge, presiding by consent over the case for almost ten years, eventually entered judgment for the defendants. King lost most claims at summary judgment because, the judge said, the medical records showed that the defendants provided adequate care. King's remaining claim against Dr. Newbold (for the delay in fitting him for a mouth guard) failed on the pleadings, the judge ruled, because King sued on it outside the two-year statute of limitations.

On appeal, King argues that a jury could find that Dr. Mitchell-Lawshea recklessly ignored King's need for care after he arrived at Stateville. Construing the record in his favor as we must at this stage, *Walker*, 940 F.3d at 963, he is correct. Following King's initial consultation with the oral surgeon in September 2007, Dr. Mitchell-Lawshea was responsible for King's care and knew that he needed surgery for his TMJ. She also knew that his CT scan revealed a fragmented jaw, and that just months earlier, his mouth bled, his face swelled, and his ability to chew had vanished. Yet she never asked the medical director to approve the surgeon's recommendation. With King's diagnosed, serious need for surgery ignored, King developed lockjaw. From these facts, a jury reasonably could conclude that Dr. Mitchell-Lawshea's inaction caused King needless pain and delayed treatment for a serious medical need. *See Petties*, 836 F.3d at 729 (failure to follow specialist's instructions can show deliberate indifference).

Dr. Mitchell-Lawshea has not offered a reason for her inaction, responding only that she was one of several dentists responsible for reviewing appointment requests. But this is beside the point. She knew of King's need for treatment independently of his frequent requests for dental care. And while shared responsibility may support an argument for seeking contribution from joint tortfeasors, *see, e.g.* Illinois Joint Tortfeasor

Contribution Act, 740 ILCS 100/2, it does not relieve her from her own potential liability.

To assist the district court on remand, we observe that the record shows the jury question as to Dr. Mitchell-Lawshea is limited to a defined period of time. She first learned of, and allegedly did not respond to, King's need for surgery to prevent lockjaw on September 26, 2007. Three weeks later, on October 19, when King experienced his mouth locking shut and he went to the emergency room, the Stateville medical director referred King to the oral surgeon. So for these three weeks, a jury could find that Dr. Mitchell-Lawshea's inaction amounted to deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (recognizing that even a short delay in treatment can support a deliberate-indifference claim if it prolongs unnecessary pain).

King next focuses on Dr. Newbold, arguing that the district court improperly concluded that the statute of limitations bars his claim based on the delay in getting his mouth guard. But King does not dispute that, at latest, Dr. Newbold's delay ended in April 2005, when he gave King the mouth guard. And he also concedes that the limitations period is two years from when he discovered his injury. *See Woods v. Illinois Dep't of Children & Family Servs.*, 710 F.3d 762, 766 (7th Cir. 2013); 735 ILCS 5/13-202. King sued, however, in February 2009, more than four years after he received the mouth guard in April 2005. So, this claim is out of time and dismissal was correct.

King responds by citing *Devbrow v. Kalu*, 705 F.3d 765 (7th Cir. 2013), to argue that his claim did not accrue until 2007, when he learned that he needed surgery. He is wrong. For deliberate-indifference claims based on medical error, we apply the accrual rules for medical malpractice. *Id*. at 768. The clock starts "when a person knows his injury and its cause." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). By April 2005, King knew that Dr. Newbold delayed fitting him for and getting him the prescribed mouth guard until April 2005, and that this delay injured him with needless pain. King replies that the injury from this delay also included his need for surgery in 2007. That may be, but he knew about the pain from the delay in April 2005, and he thought that it was serious enough to complain about it then. So that pain started the limitations period.

King next argues that the district court erred in entering summary judgment in favor of Dr. Newbold for his supposed inaction in the month of March 2007. That is the first full month of the two-year period of limitations, and it is also when King saw another dentist who observed his facial swelling, bloody mouth, and tight jaw. King argues that Dr. Newbold should have done something in March because, nine months

earlier in June 2006, Dr. Newbold saw King for his chronic TMJ pain. But June 2006 was the last time that Dr. Newbold saw King, and nothing in the record shows that he knew about King's later, deteriorating condition. To the contrary, by this time in 2006, Dr. Newbold knew that the x-ray he had previously ordered in 2004 showed no definite fracture, that King was now using the prescribed mouth guard, and that he had referred King to Menard's medical director for ongoing evaluation. Under these circumstances, Dr. Newbold cannot be held liable for the conditions that later emerged in March 2007. *See Walker*, 940 F.3d at 964 (plaintiff must show defendant's inaction caused harm).

Finally, King challenges the entry of summary judgment in favor of the Stateville dentists who treated him after his surgery, but the district court committed no error on that point. These dentists reasonably responded to King's complaints by providing palliative care and referring him to Stateville's medical director, the only one authorized to refer King to specialists. Given this response, a jury could not find that they recklessly disregarded King's need for treatment. *See Wilson v. Adams*, 901 F.3d 816, 821–22 (7th Cir. 2018) (affirming summary judgment where "totality" of care did not show deliberate indifference).

We VACATE and REMAND with respect to King's claims against Dr. Mitchell-Lawshea for ignoring the surgery recommendation. We otherwise AFFIRM.